BETTY LOU DOSSETT, APPELLANT, V. FIRST STATE BANK,
LOOMIS, NEBRASKA, APPELLEE.

627 N.W.2d 131

Filed June 8, 2001.   No. S-00-245.

William A. Tringe, Jr., for appellant.

Roger L. Shiffermiller, of Fraser, Stryker, Meusey, Olson, Boyer & Bloch, P.C., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.

## I. NATURE OF CASE

Betty Lou Dossett appeals from the order of the district court for Phelps County overruling her motion for summary judgment; granting the motion for summary judgment filed by First State Bank, Loomis, Nebraska (the bank); and dismissing her petition with prejudice. We reverse, and remand for further proceedings.

## II. STATEMENT OF FACTS

In her petition, Dossett has alleged the following facts: Dossett began working for the bank in February 1994 as a teller and book-keeper. On January 15, 1998, on her own time and not during her working hours at the bank, Dossett attended an open meeting of the Phelps County "R-6" school board. During the meeting, Dossett spoke publicly against a proposed school district merger between the R-6 school and the Loomis Public Schools.

On January 29, 1998, 2 weeks after the school board meeting, the bank terminated Dossett's employment. On February 10, the bank sent Dossett a letter signed by the bank president, John R. Nelsen, explaining the basis for her termination. The letter stated that Dossett's employment was terminated "as a result of comments made by [Dossett] during a meeting on January 15, 1998, which were negative about [the] local school board and superintendent, thereby reflecting poorly on [the] community and placing at risk substantial customers of the Bank."

On July 28, 1998, Dossett filed suit against the bank in the district court for Phelps County. Her amended petition was filed on September 18 and purports to state two causes of action. In her petition, Dossett alleged that the bank's termination of her

employment was a result of her exercise of her state constitutional right to free speech, as set forth in Neb. Const. art. I, § 5, and that such discharge violated state "public policy." Neb. Const. art. I, § 5, provides that "[e]very person may freely speak, write and publish on all subjects, being responsible for the abuse of that liberty; and in all trials for libel, both civil and criminal, the truth when published with good motives, and for justifiable ends, shall be a sufficient defense." Dossett did not identify in her petition what state public policy she claimed had been violated by her termination. In her petition, Dossett further alleged that as a result of her wrongful termination, she was entitled to damages pursuant to Neb. Rev. Stat. § 20-148 (Reissue 1997). Section 20-148 provides, inter alia, as follows:

> (1) Any person or company . . . except any political subdivision, who subjects or causes to be subjected any citizen of this state or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the United States Constitution or the Constitution and laws of the State of Nebraska, shall be liable to such injured person in a civil action or other proper proceeding for redress brought by such injured person.

On November 6, 1998, the bank filed a demurrer to Dossett's petition on the ground that the petition failed to state facts sufficient to constitute a cause of action. In an order entered January 27, 1999, the district court sustained the bank's demurrer as to Dossett's allegations relating to an alleged violation of public policy, with an indication that such "defect" could not be cured. The district court overruled the demurrer as to the allegations brought under § 20-148.

On March 5, 1999, the bank filed its answer to Dossett's petition. In its answer, the bank pled, as an affirmative defense, the allegation that Dossett's petition failed to state facts sufficient to constitute a cause of action.

On January 6, 2000, the bank filed a motion for summary judgment. On January 7, Dossett filed a cross-motion for summary judgment. The cross-motions for summary judgment came on for hearing on January 12. Nelsen's and Dossett's depositions were offered and received into evidence without objection. No other evidence was offered at the hearing.

In her deposition testimony, Dossett essentially recounted the facts recited above. Nelsen testified that the Loomis Public Schools was the bank's biggest depositor and that following Dossett's remarks concerning the proposed school district merger, he met with both the superintendent and a board member of the Loomis Public Schools and that he thereafter concluded that these persons did not want to do business with the bank·if Dossett was working there.

In an order filed January 21, 2000, the district court overruled Dossett's motion for summary judgment and granted the bank's motion for summary judgment. The district court ruled that § 20-148 was a procedural statute only and did not provide Dossett with any substantive rights. The district court noted that Dossett's claim for wrongful termination brought under § 20-148 was based on an alleged violation of Neb. Const. art. I, § 5, and that this constitutional provision required proof of state action. The court concluded that because Dossett had not alleged the requisite state action, the allegations in her petition "must fail." Accordingly, the district court granted the bank's motion for summary judgment and dismissed Dossett's petition. Dossett appealed.

### III. ASSIGNMENTS OF ERROR

On appeal, Dossett claims that the district court erred in granting the bank's motion for summary judgment and dismissing her petition. Dossett also argues, inter alia, that the district court erred in granting the bank's demurrer as to the allegations relating to her claim of a violation of public policy and in considering the legislative history of § 20-148 in connection with its ruling on the cross-motions for summary judgment.

### IV. STANDARDS OF REVIEW

The inquiry into whether a terminated employee's speech is protected under Neb. Const. art. I, § 5, is a question of law. See, *Cox v. Civil Serv. Comm. of Douglas Cty.*, 259 Neb. 1013, 614 N.W.2d 273 (2000); *Millennium Solutions v. Davis*, 258 Neb. 293, 603 N.W.2d 406 (1999). When an appeal presents questions of law, an appellate court must reach an independent, correct conclusion irrespective of the determination made by the

court below. *Sharkey v. Board of Regents*, 260 Neb. 166, 615 N.W.2d 889 (2000).

■ Summary judgment is proper when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Morrison Enters. v. Aetna Cas. & Surety Co.*, 260 Neb. 634, 619 N.W.2d 432 (2000).

■ Although the denial of a motion for summary judgment, standing alone, is not a final, appealable order, when adverse parties have each moved for summary judgment and the trial court has sustained one of the motions, the reviewing court obtains jurisdiction over all motions and may determine the controversy which is the subject of those motions or make an order specifying the facts which appear without substantial controversy and direct further proceedings as it deems just. *Shivvers v. American Family Ins. Co.*, 256 Neb. 159, 589 N.W.2d 129 (1999).

■ When it appears in a motion for summary judgment that an opposing party has failed to state a cause of action, then the motion may be treated, as to that issue, as one for judgment on the pleadings. *Rodriguez v. Nielsen*, 259 Neb. 264, 609 N.W.2d 368 (2000); *Hoch v. Prokop*, 244 Neb. 443, 507 N.W.2d 626 (1993).

## V. ANALYSIS

### 1. Termination as Violative of Public Policy

On appeal, Dossett claims that the district court erred in sustaining the bank's demurrer regarding the adequacy of the allegations in her petition pertaining to an alleged violation of public policy. Dossett alleged that the termination of her employment resulted from the exercise of free speech and that her termination violated "public policy." For the first time, on appeal, she argues in her brief that the termination of her employment violates the public policy embodied in Nebraska's public meetings law, Neb. Rev. Stat. § 84-1408 (Reissue 1999). It is well settled that the purpose of the public meetings law is to ensure that public policy is formulated at open meetings. See *Marks v. Judicial Nominating Comm.*, 236 Neb. 429, 461 N.W.2d

551 (1990). Dossett did not identify this public policy in her petition, nor did she raise an issue regarding the formulation of public policy at open meetings in argument before the district court.

█ This court has previously indicated that an appellate court will not consider an issue on appeal that was not passed upon by the trial court. *Prucha v. Kahlandt*, 260 Neb. 366, 618 N.W.2d 399 (2000); *Torres v. Aulick Leasing*, 258 Neb. 859, 606 N.W.2d 98 (2000). Accordingly, we do not consider this argument further on appeal.

## 2. GRANT OF BANK'S MOTION FOR SUMMARY JUDGMENT

Dossett claims that the district court erred in granting the bank's motion for summary judgment and dismissing her petition with prejudice. For reasons different than those asserted by Dossett, we agree with Dossett that the district court erred in granting the bank's motion for summary judgment and in dismissing the petition. Accordingly, we reverse, and remand for further proceedings.

### (a) Bank's Motion for Summary Judgment Treated as Motion for Judgment on Pleadings

Prior to ruling on the propriety of the district court's dismissal of Dossett's petition, we set forth the relevant procedural history of this case. In its answer to Dossett's petition, the bank alleged, as an affirmative defense, that Dossett's petition failed to state facts sufficient to constitute a cause of action. Approximately 10 months later, the bank filed its motion for summary judgment. Although the bank's motion does not set forth the basis for the motion, during the summary judgment hearing, the bank outlined the basis for its motion for summary judgment to the district court.

With respect to the adequacy of Dossett's petition, the bank's counsel argued that "in order to proceed under this statute [§ 20-148], the plaintiff has to assert — have merits to assert a cause of action of a substantive nature." The bank did not contend it was entitled to summary judgment as a matter of law on the ground that there were no genuine issues of material fact. Rather, we understand the affirmative defense raised in the bank's answer and the bank's argument for summary judgment as a challenge to the sufficiency of the petition to state a cause of

action. See, *Rodriguez v. Nielsen*, 259 Neb. 264, 609 N.W.2d 368 (2000); *Hoch v. Prokop*, 244 Neb. 443, 507 N.W.2d 626 (1993).

■ We have held that a motion for summary judgment is not a proper method to challenge the sufficiency of a petition to state a cause of action. See, *Rodriguez, supra*; *Ruwe v. Farmers Mut. United Ins. Co.*, 238 Neb. 67, 469 N.W.2d 129 (1991). When it has been asserted in a summary judgment motion that the petition of the opposing party has failed to state a cause of action, as far as that issue is concerned, the motion may be treated as one in fact for a judgment on the pleadings, notwithstanding its designation as something other than that. See, *Rodriguez v. Nielsen, supra*; *Hoch v. Prokop, supra*. Because the substance of the bank's motion for summary judgment in effect challenged the sufficiency of Dossett's petition, we shall treat the motion as one for judgment on the pleadings. See *id*. Accordingly, we consider whether Dossett's petition states a cause of action.

(b) Neb. Const. art. I, § 5, Requires State Action

In her petition, Dossett has alleged that her termination of employment was wrongful because it was a result of her exercise of her state constitutional right to free speech under Neb. Const. art. I, § 5, and thus, the bank is liable to her for damages under § 20-148. We have previously held in *Goolsby v. Anderson*, 250 Neb. 306, 549 N.W.2d 153 (1996), that § 20-148 provides a procedural avenue for pursuit of certain employment-related claims without exhausting the available administrative remedies and that the legislative history of §20-148 so indicates. To the extent that the district court referred to the purpose of § 20-148 and its legislative history in its order on summary judgment of January 21, 2000, the district court did not err, but was merely relying on this court's exposition in *Goolsby, supra*.

■ Nebraska is an employment-at-will state, where, unless constitutionally, statutorily, or contractually prohibited, an employer may terminate an at-will employee at any time with or without reason, without incurring liability. *Huff v. Swartz*, 258 Neb. 820, 606 N.W.2d 461 (2000); *Walpus v. Milwaukee Elec. Tool Corp.*, 248 Neb. 145, 532 N.W.2d 316 (1995); *Hamersky v. Nicholson Supply Co.*, 246 Neb. 156, 517 N.W.2d 382 (1994). Section 20-148 provides that

> [a]ny person or company . . . who subjects . . . any citizen of this state . . . to the deprivation of any rights, privileges, or immunities secured by the . . . Constitution and laws of the State of Nebraska, shall be liable to such injured person in a civil action or other proper proceeding for redress brought by such injured person.

In *Goolsby*, we stated that § 20-148 provided an "alternative method for pursuing civil rights claims that are defined elsewhere in constitutional or statutory law." 250 Neb. at 313, 549 N.W.2d at 158. We have previously recognized that § 20-148 "is a procedural statute which does not create any new substantive rights." 250 Neb. at 313, 549 N.W.2d at 157. See, also, *Adkins v. Burlington Northern Santa Fe RR. Co.*, 260 Neb. 156, 615 N.W.2d 469 (2000) (citing to *Goolsby* with approval and recognizing § 20-148 as alternative civil avenue of remedy which does not create expanded civil rights). Thus, in order to succeed under § 20-148 in this employment-related case, Dossett must successfully seek vindication of rights already existing under constitutional or statutory law. See *Goolsby, supra*.

The bank contends that Dossett failed to properly allege a cause of action for wrongful discharge. Specifically, the bank argues that in order for Dossett to allege that her employment was wrongfully terminated as a result of her exercise of her state constitutional right to free speech under Neb. Const. art. I, § 5, she must allege that her underlying free speech rights were violated by state action.

We have not specifically stated that Nebraska's constitutional guarantee of free speech, as set forth in article I, § 5, of the Nebraska Constitution, requires state action. However, this court has repeatedly and consistently stated that the guarantee of freedom of speech under the Nebraska Constitution is the same as under the First Amendment to the federal Constitution. See, *State v. Moore*, 258 Neb. 738, 605 N.W.2d 440 (2000); *Pick v. Nelson*, 247 Neb. 487, 528 N.W.2d 309 (1995); *State v. Simants*, 194 Neb. 783, 236 N.W.2d 794 (1975), *reversed on other grounds sub nom. Nebraska Press Assn. v. Stuart*, 427 U.S. 539, 96 S. Ct. 2791, 49 L. Ed. 2d 683 (1976). In order to bring a claim for violation of the U.S. Constitution's guarantee of free speech under the First Amendment, the alleged violation must involve state

action. *Hudgens v. NLRB*, 424 U.S. 507, 96 S. Ct. 1029, 47 L. Ed. 2d 196 (1976). That is, in order to seek redress for a violation of the federal constitution's guarantee of free speech, a plaintiff must allege government or state involvement in the purported violation of the exercise of his or her right to free speech.

▮ Having equated the guarantee of free speech under the Nebraska Constitution with that under the federal Constitution, we conclude that in order to bring a claim for violation of the Nebraska Constitution's guarantee of freedom of speech under Neb. Const. art. I, § 5, the alleged violation must involve state action, and that in order to state a cause of action for violation of the guarantee of free speech under article I, § 5, a plaintiff must allege state action.

We note that numerous state courts which have considered the issue under their own state constitutions' free speech provisions consisting of varying language have held that, like the federal constitution, state action is a requirement under their state constitutional free speech provisions. See, e.g., *Fiesta Mall Venture v. Mecham Recall Com.*, 159 Ariz. 371, 767 P.2d 719 (Ariz. App. 1988) (state constitution is limitation upon power of state legislature, and nothing in state constitution's free speech provision was intended to restrain private conduct); *Cologne v. Westfarms Associates*, 192 Conn. 48, 469 A.2d 1201 (1984) (nothing in history of state bill of rights suggests it was intended to guard against private interference with such rights); *Woodland v Citizens Lobby*, 423 Mich. 188, 212, 378 N.W.2d 337, 348 (1985) (interpreting state constitution's free speech provision "as implicitly limited to protection against state action"); *SHAD Alliance v. Smith Haven Mall*, 66 N.Y.2d 496, 500, 488 N.E.2d 1211, 1213, 498 N.Y.S.2d 99, 101 (1985) ("history of the State action requirement, traditional usage and understanding and contemporary approaches to constitutional adjudication" led court to conclude state constitution's provision regarding free speech requires state action); *Eastwood Mall, Inc. v. Slanco*, 68 Ohio St. 3d 221, 626 N.E.2d 59 (1994) (state constitution's guarantee of free speech no broader than First Amendment); *Jacobs v. Major*, 139 Wis. 2d 492, 407 N.W.2d 832 (1987) (free speech provision of state constitution prohibits only state interference with speech). But see, *Robins v. Pruneyard Shopping Center*, 23 Cal.

3d 899, 592 P.2d 341, 153 Cal. Rptr. 854 (1979) (state constitution's free speech provision protects speech, reasonably exercised, at privately owned shopping centers); *State v. Schmid*, 84 N.J. 535, 560, 423 A.2d 615, 628 (1980) (state constitution's guarantee of free speech protects "unreasonably restrictive or oppressive conduct on the part of private entities that have otherwise assumed a constitutional obligation not to abridge the individual exercise of such freedoms because of the public use of their property"); *Alderwood Assocs. v. Envtl. Council*, 96 Wash. 2d 230, 635 P.2d 108 (1981) (interpreting state constitution's free speech provision as not requiring state action). For the sake of completeness we note that, unlike the present case, none of these cases involved the issue of free speech in the context of a wrongful discharge from employment.

### (c) Insufficiency of Allegations in Petition

Having concluded that state action is a requirement for the pleading and proof of an action based on a violation of the guarantee of free speech under Neb. Const. art. I, § 5, we must examine Dossett's petition to determine if it adequately states a cause of action. Under Neb. Rev. Stat. § 25-804(2) (Reissue 1995), a petition must contain "a statement of the facts constituting the cause of action, in ordinary and concise language, and without repetition." Although Dossett alleges she was damaged by her termination from employment, she does not allege that her state constitutional rights to the exercise of free speech were violated as a result of state action. Without a statement of facts to support an allegation of state action, Dossett's petition does not sufficiently plead a cause of action for wrongful discharge brought under § 20-148 for a violation of her state constitutional right to free speech under Neb. Const. art. I, § 5.

We have held that when a party challenges the sufficiency of a petition to state a cause of action, a motion for judgment on the pleadings should be sustained only when an amendment cannot cure the defect. *Rodriguez v. Nielsen*, 259 Neb. 264, 609 N.W.2d 368 (2000); *Hoch v. Prokop*, 244 Neb. 443, 507 N.W.2d 626 (1993). We determine that there is a reasonable possibility that Dossett could cure the defect as to the petition's allegations which purport to state a cause of action for violation

of Neb. Const. art. I, § 5, brought under § 20-148, by an adequate allegation of state action. Thus, the district court erred in dismissing Dossett's petition.

## VI. CONCLUSION

The district court committed error by granting summary judgment in favor of the bank and dismissing Dossett's petition. Because, as the bank argued, Dossett's petition failed to allege state action and therefore failed to state a cause of action under § 20-148 for violation of Dossett's state constitutional right to free speech under Neb. Const. art. I, § 5, the bank's motion for summary judgment should have been treated by the district court as a motion for judgment on the pleadings. Because there is a reasonable possibility of curing the defect, the motion for judgment on the pleadings should be treated as a demurrer for failure to state a cause of action, and Dossett should be given leave to amend her petition as to the allegations brought pursuant to § 20-148. The district court's decision as to the allegations claiming a violation of public policy is unaffected by this decision. Regarding those issues raised by Dossett's allegations brought pursuant to § 20-148, the judgment of the district court dismissing Dossett's petition is reversed, and the cause is remanded to the district court for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.