ALAN SYDOW, APPELLEE, V. CITY OF GRAND ISLAND,
NEBRASKA, ET AL., APPELLANTS.
639 N.W.2d 913

Filed March 8, 2002. No. S-01-611.

390

Charles J. Cuypers, Grand Island City Attorney, for appellants.

Vincent M. Powers and Adrienne S. Davis, of Vincent M. Powers & Associates, for appellee.

Howard E. Tracy, amicus curiae.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

In this bypass appeal, we are asked to determine which statute applies when determining the number of signatures required to place an initiative that seeks to enact a sales tax to create an endowment fund for a city on an election ballot. Neb. Rev. Stat. § 18-2524 (Reissue 1997) pertains to initiative petitions in general and requires valid signatures totaling at least 15 percent of the qualified electors of the city. Neb. Rev. Stat. § 77-27,142.03 (Reissue 1996) pertains to elections regarding sales taxes and requires 10 percent of the votes cast at the last preceding municipal election.

The appellee, Alan Sydow, circulated an initiative petition which proposed that a half-cent sales tax be enacted to create an endowment providing moneys to the City of Grand Island's general fund. He obtained sufficient valid signatures to meet the requirements of § 77-27,142.03, but not sufficient signatures to meet the requirements of § 18-2524. The appellants, the City of Grand Island, members of the city council, and the city clerk (collectively the City), refused to place the proposal on the ballot. The district court issued an alternative writ of mandamus requiring that the proposal be placed on the ballot. The City appeals. We affirm in part, and in part reverse and vacate.

## BACKGROUND

Because of a stipulation, the facts of this case are undisputed. On April 8, 2000, Sydow, a citizen of Grand Island, filed an initiative petition for approval for circulation with the city clerk. The listed summary of the initiative stated that it was to enact a "½¢ sales tax for creating an endowment for the city." The measure's defined purpose stated that the proceeds of the tax "shall be used to purchase 12-month U.S. Treasury bills. The interest generated shall be used to fund the city's general budget. The

principal shall continue to accumulate and shall not be spent except as directed by voters at an election." Sydow's intent was that after a period of time, interest from the endowment would fully fund city services, thereby eliminating sales and property taxes. On April 10, the clerk advised Sydow that the initiative petition was in the proper form for circulation, and the petition was then circulated to obtain signatures.

On October 10, 2000, Sydow filed signed petitions with the city clerk. At a November 6 city council meeting, the council passed a resolution to request the election commissioner to verify the signatures on the petition and resolved that under § 18-2524, there must be valid signatures equal in number to at least 15 percent of the qualified electors of the city. According to records of the election commissioner, this number is 3,601. Sydow, however, maintained that he was proposing the enactment of a sales tax and that under § 77-27,142.03, the number of valid signatures required was 10 percent of the votes cast at the last preceding municipal election. According to the records of the election commissioner, this number is 1,248.

The parties stipulated that on November 27, 2000, the election commissioner formally notified the city council that the number of valid signatures on the petition totaled 1,449. The parties further stipulated that the election commissioner complied with the provisions of Neb. Rev. Stat. § 18-2518 (Reissue 1997) when she provided the notification. The election commissioner verified that the petition had 100 percent of the required signatures if § 77-27,142.03 applied and that it had less than 100 percent of the required signatures if § 18-2524 applied. The City then refused to proceed with an election on the proposal.

On December 29, 2000, Sydow filed a pleading entitled "Petition for Mandamus and Affidavit" seeking to compel the City to place the proposal on the ballot of the next election. The factual allegations set forth in the petition deal exclusively with the dispute between Sydow and the City regarding which statute governs the number of signatures required to place the measure on the ballot. Sydow alleged no facts regarding a dispute as to the validity of the measure if enacted. However, in addition to mandamus, Sydow's prayer for relief included a request that the court enter a declaratory judgment that the measure proposed by

the petition "is a subject, which may be enacted by the initiative petition process and is otherwise validly and lawfully proposed under the applicable provisions of law." The City raised no issue regarding the legality of the proposed endowment in its answer to Sydow's petition, nor did it affirmatively seek declaratory relief on this issue.

At the hearing on the show cause why an alternative writ of mandamus should not be issued, the City stated, "We're not here to show cause. We're here to evidence compliance with what's ordered." The district court found that the petition stated an initiative for a sales tax and that § 77-27,142.03 applied. The court concluded that there was a sufficient number of valid signatures to place the proposal on the ballot. The court then concluded that mandamus was a proper remedy and issued an alternative writ of mandamus. The court also granted Sydow's request for a declaratory judgment. The court made no determination on the validity of the actual creation of an endowment fund, stating that the endowment issue was not before the court.

At the show cause hearing on the alternative writ, the City argued that it would not have statutory authority to create the endowment proposed by Sydow. The City argued that Neb. Rev. Stat. § 77-27,146 (Reissue 1996) required that sales taxes be deposited in the general fund of the City and that Neb. Rev. Stat. § 13-504 (Cum. Supp. 2000) limited the amount of reserves the City could hold in its general fund. The City then stated, without presenting any formal evidence, that it was already near the statutory limit for holding reserves. Sydow protested to the court the City's raising of the validity of the proposal because the City had previously stated that it would waive any argument to show cause that it would not comply with the writ. Sydow also reminded the court that it had previously stated that it would not decide the issue of whether an endowment could be created unless the proposal were later enacted by the voters. Sydow argued that the validity issue would be dealt with if the proposal were enacted. Referring to the order dealing with the alternative writ, the court then stated:

> Previously I found that the initiative petition was a petition for a half-cent sales tax and that the relator obtained enough signatures to put the sales tax issue on the ballot. I made no

determination at that time on whether the endowment fund would be created or that there was a required number of signatures for the creation of an endowment fund.

The City stated that it would comply with the writ by placing the proposal on the ballot but would reword the proposal's provision for an endowment fund to state that the tax would be enacted "with the proceeds collected therefrom to be used specifically for funding an endowment for the City's General Fund." The City then filed this appeal. We granted the City's motion to bypass and advance oral argument. An amicus brief was filed by a Grand Island attorney.

## ASSIGNMENTS OF ERROR

The City assigns that the district court erred in (1) finding that the petition proposed a measure for a half-cent sales tax instead of a proposal to create an endowment fund, (2) determining that § 77-27,142.03 instead of § 18-2524 applied to the case, and (3) determining that it was exercising ministerial functions and that a writ of mandamus should be issued.

## STANDARD OF REVIEW

A jurisdictional question which does not involve a factual dispute is a matter of law. *In re Interest of Sabrina K.*, 262 Neb. 871, 635 N.W.2d 727 (2001). Statutory interpretation presents a question of law. *Id.*

When reviewing questions of law, an appellate court has an obligation to resolve the question independently of the conclusion reached by the trial court. *Id.*

## ANALYSIS

### JURISDICTION

Sydow contends that this court lacks jurisdiction because the district court stated that it did not determine any issues regarding the actual creation of an endowment fund. Sydow argues that the district court left an issue to be decided and that this appeal is not from a final order.

A party may appeal from a court's order only if the decision is a final, appealable order. *Airport Auth. of Village of Greeley v. Dugan*, 259 Neb. 860, 612 N.W.2d 913 (2000). When no further action of the court is required to dispose of a pending

case, the order is final. *City of Omaha v. Morello,* 257 Neb. 869, 602 N.W.2d 1 (1999).

Sydow sought two forms of relief: (1) a writ of mandamus and (2) a declaratory judgment that the measure proposed by the petition is a subject which may be enacted by the initiative petition process and is otherwise validly and legally proposed under the applicable provisions of law. Although the district court stated that it was not addressing the City's argument regarding the validity of the endowment fund, the district court granted Sydow's requests for mandamus and a declaratory judgment. The district court completely disposed of the case. We conclude that there is a final order and that we have jurisdiction.

### NUMBER OF SIGNATURES REQUIRED

The City contends that the district court erred in determining that the petition sought to enact a sales tax and was subject to § 77-27,142.03 instead of § 18-2524. The City argues that because the petition sought not only an enactment of a sales tax but also sought to create an endowment fund, it proposed a broader measure than is authorized under the Nebraska Revised Statutes by chapter 77 and is governed wholly by chapter 18. The City focuses on language from Neb. Rev. Stat. § 77-27,142.02 (Reissue 1996), which states that a sales tax proposal "may include any terms and conditions set forth in the resolution proposing the tax, such as a termination date or the specific project or program for which the revenue received from such tax will be allocated." The City argues that under this language, a sales tax proposal that is covered by chapter 77 and which states how the revenue will be used must be enacted to fund an existing program instead of creating a new program.

Section 18-2524 applies to initiative petitions in general and states in part:

> Whenever an initiative petition bearing signatures equal in number to at least fifteen percent of the qualified electors of a municipal subdivision has been filed with the city clerk and verified pursuant to section 18-2518, it shall be the duty of the municipal subdivision's governing body to consider passage of the measure contained in the petition, including an override of any veto, if necessary. If the governing body

fails to pass the measure without amendment, including an override of any veto, if necessary, within thirty days from the date it received notification pursuant to section 18-2518, the city clerk shall cause the measure to be submitted to a vote of the people at the next regularly scheduled primary or general election held within the municipal subdivision.

Neb. Rev. Stat. § 77-27,142 (Reissue 1996) authorizes a city to increase sales and use taxes, provided that an election is held and a majority of voters approve the tax. Section 77-27,142.03 allows the electors to petition the government to submit a sales tax question and states in part:

(1) Whenever, at least forty-five days prior to any city, county, or state election, the qualified electors of any municipality, equal in number to ten percent of the votes cast at the last preceding municipal election, shall petition the governing body to submit such question, it shall be the duty of the governing body to submit the question at the next primary, general, or special election.

Section 77-27,142.02 provides in part:

Except as otherwise provided by section 77-27,142, after February 14, 1978, the power granted by section 77-27,142 shall not be exercised unless and until the question has been submitted at a primary, general, or special election held within the incorporated municipality and in which all qualified electors shall be entitled to vote on such question. The officials of the incorporated municipality shall order the submission of the question by submitting a certified copy of the resolution proposing the tax to the election commissioner or county clerk not later than forty-one days prior to the primary or general election, or within thirty days before a special election. *The question may include any terms and conditions set forth in the resolution proposing the tax, such as a termination date or the specific project or program for which the revenue received from such tax will be allocated* . . . .

(Emphasis supplied.)

■ To the extent that there is conflict between two statutes on the same subject, the specific statute controls over the general statute. *In re Interest of Sabrina K.*, 262 Neb. 871, 635 N.W.2d

727 (2001); *Bergan Mercy Health Sys. v. Haven*, 260 Neb. 846, 620 N.W.2d 339 (2000). If the petition seeks to enact a sales tax under chapter 77, § 77-27,142.03 controls and there would be sufficient valid signatures for the measure to be placed on the ballot. If the petition did not seek to propose a sales tax governed by chapter 77, then under chapter 18, there would be insufficient valid signatures to place the proposed measure on the ballot.

In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning; an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *Rodriguez v. Monfort, Inc.*, 262 Neb. 800, 635 N.W.2d 439 (2001). A court must attempt to give effect to all parts of a statute, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless. *City of Lincoln v. Nebraska Liquor Control Comm.*, 261 Neb. 783, 626 N.W.2d 518 (2001). As an aid to statutory interpretation, appellate courts must look to the statute's purpose and give to the statute a reasonable construction which best achieves that purpose, rather than a construction which would defeat it. *Fontenelle Equip. v. Pattlen Enters.*, 262 Neb. 129, 629 N.W.2d 534 (2001); *Fay v. Dowding, Dowding*, 261 Neb. 216, 623 N.W.2d 287 (2001).

A statute is open for construction when the language used requires interpretation or may reasonably be considered ambiguous. *Fontenelle Equip. v. Pattlen Enters., supra*; *State ex rel. Stenberg v. Moore*, 258 Neb. 199, 602 N.W.2d 465 (1999). When a statutory term is reasonably considered ambiguous, a court may examine the legislative history of the act in question in order to ascertain the intent of the Legislature. *Fontenelle Equip. v. Pattlen Enters., supra.*

Finally, we have stated:

"The decisions [of the courts] almost universally hold that the power of initiative must be liberally construed to promote the democratic process and that the right of initiative constitutionally provided should not be circumscribed by restrictive legislation or narrow and strict interpretation of the statutes pertaining to i[t]s exercise."

*State ex rel. Stenberg v. Moore*, 258 Neb. at 212-13, 602 N.W.2d at 475.

Section 77-27,142.02 provides that a question for a sales tax may include terms or conditions proposing the tax, such as a termination date of "the specific project or program for which the revenue received from such tax will be allocated." The City argues the quoted language means that the legislative intent is that sales taxes enacted under chapter 77 must be allocated to an existing program. It could be inferred that chapter 77 does not apply to the enactment of a sales tax creating a new program. Accordingly, we conclude that § 77-27,142.02 requires interpretation and is reasonably considered ambiguous. We next consider the legislative history of chapter 77.

The language of § 77-27,142.02 was adopted in 1986. The legislative history shows that the Legislature was concerned that cities were facing problems meeting monetary needs for specific projects and that cities were seeking property tax relief. It was proposed that § 77-27,142.02 be amended to allow the enactment of a sales tax subject to any other terms, limitations, or conditions. Introducer's Statement of Intent, L.B. 890, Committee on Revenue, 89th Leg., 2d Sess. (Jan. 29, 1986). The legislative history as a whole makes clear that funding for a new project, not just an existing project, was contemplated under the amendment. Throughout the history, there are references to raising sales taxes to fund new projects, such as swimming pools, or to purchase new equipment, such as fire equipment. Allocation of sales taxes for property tax relief was specifically addressed. At a committee hearing, senators discussed whether it would be acceptable for a ballot proposal to seek to raise sales taxes for the specific purpose of relieving property taxes and agreed that it would be possible under the amendment. Committee Records, 89th Leg., 2d Sess. 53-54 (Jan. 29 1986). A similar discussion was held during floor debate. 89th Leg., 2d Sess. 12235-36 (April 15, 1986).

The legislative history shows an intent of the Legislature to allow a sales tax to be proposed by initiative petition and allows the proposal to allocate the tax to a new program or project. We further note that only chapter 77 authorizes a city to enact sales taxes by initiative petition. Chapter 18 does not provide authorization for a sales tax to be enacted. Any proposal that involves the enactment of a sales tax would logically be governed by chapter 77.

■ We determine that the petition sought to enact a sales tax which is governed by chapter 77 and that the proposed allocation of the tax to create an endowment fund did not remove the proposal from being governed by § 77-27,142.03. Accordingly, § 77,27,142.03 dictates the number of valid signatures needed to place the proposal on the ballot. The City's assignment of error on this issue is without merit.

## MANDAMUS

The City next argues that mandamus is not an appropriate remedy. In addition, at oral argument, the City and amicus argued that the City lacks statutory authority to create the endowment proposed by Sydow and that the decision of the district court should be reversed. The City's contention is that under Neb. Rev. Stat. § 18-2538 (Reissue 1997), the issue of whether the proposed measure would be valid if enacted was properly raised and before the court as part of Sydow's declaratory judgment action. The City argued at oral argument that under chapter 18, article 25, a proposed measure that would not be valid as enacted cannot be placed on the ballot and that a writ of mandamus cannot compel it to place an invalid proposal on the ballot. Sydow, however, contends that the issue of whether an endowment could be created if enacted by the voters was not presented to the court and is not ripe for appeal. Sydow argues that the issue before us is narrowly limited to whether he obtained sufficient signatures to place the proposal on the ballot and that any future validity of the proposal is irrelevant to an action for mandamus that is concerned only with the number of signatures required.

■ The only issue raised by the pleadings was the number of signatures required to place the proposal on the ballot. The pleadings did not include factual statements regarding the validity of the proposal if it was later enacted. The purpose of pleadings is to frame the issues upon which a cause of action is to be tried, and the issues in a given case will be limited to those which are pled. *Fackler v. Genetzky, ante* p. 68, 638 N.W.2d 521 (2002). Nebraska law defines pleadings as the written statements by the parties of the facts constituting their respective claims and defenses. *Christianson v. Educational Serv. Unit No. 16*, 243 Neb. 553, 501 N.W.2d 281 (1993).

Mandamus is a law action and is defined as an extraordinary remedy, not a writ of right, issued to compel the performance of a purely ministerial act or duty, imposed by law upon an inferior tribunal, corporation, board, or person, where (1) the relator has a clear right to the relief sought, (2) there is a corresponding clear duty existing on the part of the respondent to perform the act, and (3) there is no other plain and adequate remedy available in the ordinary course of law. *State ex rel. Wieland v. Beermann*, 246 Neb. 808, 523 N.W.2d 518 (1994); *State ex rel. Creighton Univ. v. Hickman*, 245 Neb. 247, 512 N.W.2d 374 (1994). The general rule is that an act or duty is ministerial if there is an absolute duty to perform in a specified manner upon the existence of certain facts. *State ex rel. Wieland v. Beermann, supra.* Although the issue as to the required number of signatures is controlled by § 77-27,142.03, chapter 18, article 25, controls the procedural requirements for the initiative process.

Section 18-2538 provides in pertinent part:

Any action brought for declaratory judgment for purposes of determining whether a measure is subject to limited referendum or referendum, or whether a measure may be enacted by initiative, may be filed in the district court at any time after the filing of a referendum or initiative petition with the city clerk for signature verification until forty days from the date the governing body received notification pursuant to section 18-2518. *If the municipality does not bring an action for declaratory judgment to determine whether the measure is subject to limited referendum or referendum, or whether the measure may be enacted by initiative until after it has received notification pursuant to section 18-2518, it shall be required to proceed with the initiative or referendum election in accordance with sections 18-2501 to 18-2537 and this section. If the municipality does file such an action prior to receiving notification pursuant to section 18-2518, it shall not be required to proceed to hold such election until a final decision has been rendered in the action.* Any action for a declaratory judgment shall be governed generally by sections 25-21,149 to 25-21,164, as amended from time to time . . . .

(Emphasis supplied.)

Section 18-2518 provides:

> (1) Signed petitions shall be filed with the city clerk for signature verification. Upon the filing of a petition, a city, upon passage of a resolution by the governing body of such city, and the county clerk or election commissioner of the county in which such city is located may by mutual agreement provide that the county clerk or election commissioner shall ascertain whether the petition is signed by the requisite number of voters. . . . When the verifying official has determined that one hundred percent of the necessary signatures required by sections 18-2501 to 18-2537 have been obtained, he or she shall notify the municipal subdivision's governing body of that fact, and shall immediately forward to the governing body a copy of the petition.

Under § 18-2538, either party may seek a declaratory judgment determining whether a proposed measure is a measure that may be enacted by initiative up to 40 days after the governing body receives notification of the verified signatures pursuant to § 18-2518. But, if a city does not bring an action before notification is received, it must proceed with an election on the initiative. If a city files a declaratory judgment action before notification is received, it will not be required to place the challenged proposal on the ballot until a final decision has been rendered in the action. Thus, the plain language of § 18-2538, which we are obligated to respect and enforce, specifically contemplates a circumstance in which a municipality may be required to place an initiative measure on the ballot before a court determines whether the measure would be legally valid if enacted by the voters. This concept is not foreign to our jurisprudence. See *Duggan v. Beermann*, 249 Neb. 411, 544 N.W.2d 68 (1996) (holding constitutional amendment proposed by initiative measure properly challenged after enactment).

Here, the parties stipulated that the election commissioner formally notified the city council of the number of verified signatures in compliance with § 18-2518. The City did not at any time seek a declaratory judgment that the proposal was not a measure that may be enacted by initiative. Thus, under § 18-2538, the City was required to place the proposal on the ballot. Had the City wished to avoid placing the proposal on the

ballot while it challenged whether it could be enacted by initiative, it was required to file a declaratory judgment action before notification of the verified number of signatures was received. Because the City failed to seek a declaratory judgment before it received notification pursuant to § 18-2518, the City has a ministerial duty to place the proposal on the ballot.

We note that Sydow filed his own request for a declaratory judgment after notification was received by the City under § 18-2518. But by that time, the City was already required to place the proposal on the ballot. Further, the district court did not consider the issue of the validity of the proposal if enacted because it determined that the issue was not before it. On appeal, the parties do not address in their briefs whether the proposal would be valid if enacted by the voters and instead focus on the number of signatures required. Only the amicus brief addresses the issue of the validity of the proposal if enacted.

 We have routinely held that in appellate proceedings, the examination by the appellate court is confined to questions which have been determined by the trial court. *Maxwell v. Montey*, 262 Neb. 160, 631 N.W.2d 455 (2001); *Torres v. Aulick Leasing*, 258 Neb. 859, 606 N.W.2d 98 (2000). An appellate court will not consider an issue on appeal that was not passed upon by the trial court. *Dossett v. First State Bank*, 261 Neb. 959, 627 N.W.2d 131 (2001); *Adams v. State*, 261 Neb. 680, 625 N.W.2d 190 (2001).

As we noted, Sydow's pleadings did not raise the issue of whether an endowment can be created; the only issue addressed by the court was the sufficiency of the signatures. Because the district court did not address the validity of the proposal if it were enacted by the voters and because the parties do not focus on that issue on appeal, we do not address it. We hold only that sufficient valid signatures were obtained to place the proposal on the ballot and that the City was required to proceed with an election on the proposal. Thus, we affirm the order of the court granting Sydow's request for a writ of mandamus.

Although we affirm the court's order entering a writ of mandamus, we do not affirm the declaratory judgment. The court specifically did not address the issue of whether the proposal would be valid if enacted, yet it entered a declaratory judgment

that the petition "is a subject which may be enacted by the initiative petition process and is otherwise validly and lawfully proposed under the applicable provisions [of law]." We determine that it was plain error for the court to enter this order after it had expressly determined that the issue was not before it. Accordingly, we affirm the issuance of a writ of mandamus but reverse and vacate the declaratory judgment.

We note that our holding does not preclude the City from challenging the validity of the proposal should the voters choose to enact it. If the measure is enacted, the City may file a declaratory judgment action under Neb. Rev. Stat. § 25-21,149 (Reissue 1995) to challenge the City's ability to implement the measure. Because neither the district court nor this court addressed the issue, principles of res judicata would not apply.

## CONCLUSION

We determine that § 77-27,142.03 controls the number of signatures required to place the proposal on the ballot. We further determine that mandamus was the proper remedy. But we determine that the court erred in entering a declaratory judgment. Accordingly, we affirm the order of the district court issuing an alternative writ of mandamus and reverse and vacate the order entering a declaratory judgment. Because the district court did not pass on the subject, we do not address whether the proposal would be valid if enacted by the voters.

AFFIRMED IN PART, AND IN PART
REVERSED AND VACATED.

WRIGHT, J., dissenting.

The majority affirms the district court's writ of mandamus directing that the initiative petition be placed on the ballot for a vote by the electors of the City of Grand Island (City). The majority concludes that the district court did not decide whether the initiative petition was a valid measure, and therefore, it does not address that issue. I respectfully dissent.

The initiative was a half-cent sales tax to be used to create an endowment. The interest generated from U.S. Treasury bills purchased with sales tax funds would be allowed to accumulate in the City's general fund until spent as directed by the voters at a future election. The City refused to place the matter on the ballot

and did not seek declaratory relief pursuant to Neb. Rev. Stat. § 18-2538 (Reissue 1997), which permits a municipality to seek a declaratory judgment regarding any question arising under chapter 18, article 25. Section 18-2538 also provides that if the municipality does not timely file such action, it shall be required to proceed with the initiative. In my opinion, the City's failure to ask the district court to determine the validity of the initiative does not change the issue before us.

When Sydow, the relator, sought a mandamus, he had the burden to establish a clear legal right to the relief. Mandamus is an extraordinary remedy imposed by law when the relator has a clear legal right to the relief sought. See *State ex rel. AMISUB v. Buckley*, 260 Neb. 596, 618 N.W.2d 684 (2000).

Use of the initiative process to enact measures is governed by Neb. Rev. Stat. §§ 18-2501 to 18-2538 (Reissue 1997 & Cum. Supp. 2000). In order for a measure to be placed on the ballot, it must be an ordinance, charter, provision, or resolution which is within the legislative authority of the governing body of a municipal subdivision to pass. See § 18-2506 (defining "measure"). Thus, before the district court could issue the mandamus, it had to determine that the initiative was within the authority of the City to pass. The burden is always upon the relator to show clearly and conclusively that it is entitled to a particular thing that the relator asks. See *State ex rel. Wal-Mart v. Kortum*, 251 Neb. 805, 559 N.W.2d 496 (1997).

Although the district court stated that it made no determination of the validity of an endowment fund because that issue was not before it, the court found: "Relator is entitled to a declaratory judgment declaring that the measure proposed by the Relator's initiative petition for the one-half cent sales tax is a subject which may be enacted by the initiative petition process and is otherwise validly and lawfully proposed under the applicable provisions of law." Having so found, the court ordered the City to submit the "question" at the next election.

The majority has decided that since the validity of the proposal was not raised by the parties, the district court could not decide the validity of the proposal. It concludes that because the City did not seek a declaratory judgment to determine the validity of the initiative, § 18-2538 required that the City place the

proposal on the ballot. I respectfully disagree. This is an action for mandamus, and I do not believe § 18-2538 is controlling.

The issue, as framed by the pleadings, is whether Sydow has a clear legal right to have the initiative on the ballot. The number of signatures does not establish this right. Sydow does not have a clear legal right unless the proposal is within the legislative authority of the City to pass. See § 18-2506. Before the court can issue the mandamus, it must first determine whether the City has the authority to pass the proposal. There is no clear legal right if the City cannot legally enact the proposal.

The district court found that Sydow was entitled to a declaratory judgment, stating that "the measure proposed by the Relator's initiative petition for the one-half cent sales tax is a subject which may be enacted by the initiative petition process and is otherwise validly and lawfully proposed under the applicable provisions of law." Therefore, in my opinion, the district court did decide that issue, and it should be addressed by this court.

Perhaps the following example will better illustrate: An initiative proposes the construction of a gambling casino or some other illegal activity. The relator obtains the required number of signatures and files the petition with the city. The city refuses to place the measure on the ballot. The relator seeks a mandamus, and the only issue presented to the trial court is whether the relator has obtained the required number of signatures. In my opinion, the trial court could not issue a mandamus without addressing the validity of the initiative under § 18-2506. There is no clear legal right to have an illegal initiative on the ballot even if the city failed to seek declaratory relief under § 18-2538.

In the case at bar, the district court could not issue the mandamus unless it first determined that the initiative complied with § 18-2506. A governing body should not be required to place an initiative on the ballot that it cannot enact even if approved by the electors.

GERRARD, J., joins in this dissent.