IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE INTEREST OF EMMANUEL K. & DANIEL K.D.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF EMMANUEL K. AND DANIEL K.D.,
CHILDREN UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

FELIPE H., APPELLANT.

Filed March 5, 2019.    No. A-18-737.

Appeal from the Separate Juvenile Court of Lancaster County: REGGIE L. RYDER, Judge. Affirmed.

B. Gail Steen, of Steen Law Office, for appellant.

Patrick F. Condon, Lancaster County Attorney, and Maureen E. Lamski for appellee.

RIEDMANN, BISHOP, and WELCH, Judges.

WELCH, Judge.

INTRODUCTION

Felipe H. appeals the order of the Lancaster County Separate Juvenile Court adjudicating Emmanuel K. and Daniel K.D. as juveniles within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016). He argues that, despite an instance of domestic violence, there was no evidence that his children were placed at risk of harm. For the reasons stated below, we affirm.

STATEMENT OF FACTS

In June 2017, Felipe attacked his girlfriend, Nabon D., by biting her arm, repeatedly hitting her in the face, and kneeing her in the back. He then drove away with 5-year-old Emmanuel. Felipe

- 1 -

was arrested and charged with offenses including domestic assault. He later pled guilty to disturbing the peace, driving on a suspended license, and failing to use a child passenger restraint.

In June 2018, a contested adjudication was held. Officer Sara Genoways testified that in June 2017, she encountered Nabon when she responded to a report of a female screaming. Genoways observed a bite mark on Nabon's arm which Nabon attributed to Felipe. The police report set forth that Emmanuel told the officers that Felipe hit Nabon.

Felipe testified that he assaulted Nabon but the children did not witness the assault. He testified he was arrested, spent 4½ months in jail, and had not participated in domestic violence or anger management classes. He claimed that he had been able to communicate and work with Nabon, that their fighting was in the past, and that they had not had any verbal fights in 2018.

Cheyanne MacClain, the caseworker assigned to the case, testified that Felipe will verbally cut off Nabon and tell her to say something else "very frequent[ly]" and "whenever they're together, there's typically bickering." She testified that in April 2018, Felipe requested visitation with the children separate from Nabon's visitation because of past arguments.

The court adjudicated Daniel and Emmanuel to be within the meaning of § 43-247(3)(a) due to the fault or habits of Felipe. Felipe timely appeals.

ASSIGNMENT OF ERROR

Felipe assigns that the juvenile court erred by finding that his actions in June 2017 placed the children at risk of harm in June 2018 without evidence that his actions impacted the children.

STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches a conclusion independently of the juvenile court's findings. *In re Interest of Lilly S. & Vincent S.*, 298 Neb. 306, 903 N.W.2d 651 (2017).

ANALYSIS

Felipe argues that the State provided no evidence that the children were at risk of harm in 2018. He claims that the State's reliance on the June 2017 domestic violence incident was insufficient without a specific showing of its impact on the children.

To obtain jurisdiction over a juvenile at the adjudication stage, the court's only concern is whether the conditions in which the juvenile presently finds himself or herself fit within the asserted subsection of § 43-247. *In re Interest of Lilly S. & Vincent S., supra*; *In re Interest of Justine J. et al.,* 286 Neb. 250, 835 N.W.2d 674 (2013). "'Section 43-247(3)(a) outlines the basis for the juvenile court's jurisdiction and grants exclusive jurisdiction over any juvenile "who lacks proper parental care by reason of the fault or habits of his or her parent, guardian, or custodian."'" *In re Interest of Lilly S. & Vincent S.*, 298 Neb. at 315, 903 N.W.2d at 660, quoting *In re Interest of Justine J. et al., supra*. While the State need not prove that the child has actually suffered physical harm, Nebraska case law is clear that at a minimum, the State must establish that without intervention, there is a definite risk of future harm. *In re Interest of Lilly S. & Vincent S., supra*; *In re Interest of Justine J. et al., supra*. The State must prove such allegations by a preponderance of the evidence. *In re Interest of Lilly S. & Vincent S., supra*; *In re Interest of Justine J. et al., supra*.

Conceivably, a child need not witness domestic violence or be in the vicinity in order to be placed at risk for harm. For example, if a child observed the subsequent results of domestic violence or was otherwise made aware of the domestic violence, this could constitute a risk for harm to the child. But to support adjudication, this court has required an evidentiary nexus between a parent's fault or habits and the risk for harm to the child.

*In re Interest of Lilly S. & Vincent S.*, 298 Neb. at 316, 903 N.W.2d at 660-61.

Here, the children not only observed the subsequent results of domestic violence, but Emmanuel reported to officers that Felipe hit Nabon. We find that this constituted a risk for harm to the children. However, because this incident occurred about a year before the adjudication, the State was also required to establish, at a minimum, that without intervention, there was a definite risk of future harm. *In re Interest of Lilly S. & Vincent S., supra*. We find that there was a definite risk of future harm because of the relative severity of the incident and the evidence that Felipe has not rehabilitated himself. Felipe repeatedly hit Nabon's face, bit her arm, and kneed her in the back. Although he testified that the children did not witness the abuse, he admitted that the abuse occurred while the children were home. Additionally, Felipe has not shown that he has rehabilitated himself. He has not taken domestic violence or anger management classes nor presented any verifiable evidence of rehabilitation efforts. While he described his relationship with Nabon as much better, the caseworker testified that "whenever they're together, there's typically bickering" and that, shortly before the adjudication, he asked to visit the children separately from Nabon due to their past arguments. For these reasons, we find that the risk to the children continued to the time of adjudication. The juvenile court did not need further evidence of harm to the children to conclude they were at risk.

                                    CONCLUSION

Based upon our de novo review of the record, we affirm the order of the juvenile court adjudicating the minor children.

                                                                    AFFIRMED.